# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PATRICIA WESLEY,      )
                            )
   Claimant-Below/Appellant    )
                            )
   v.                           )      C.A. No. N21A-01-005 JRJ
                            )
STATE OF DELAWARE,     )
                            )
   Employer-Below/Appellee.   )

## MEMORANDUM OPINION

Submitted: June 30, 2021
Decided: August 23, 2021

*Upon Patricia Wesley's Appeal from the Decision of the Industrial Accident Board*: **AFFIRMED**.

Jonathan B. O'Neill, Esquire, Kimmel, Carter, Roman, Peltz & O'Neill, P.A., 56 West Main Street, Suite 400, Plaza 273, Christiana, Delaware 199702, Attorney for Claimant-Below/Appellant.

Nicholas E. Bittner, Esquire, Heckler & Frabizzio, 800 Delaware Avenue, Suite 200, P.O. Box 128, Wilmington, Delaware 19899, Attorney for Employer-Below/Appellee.

**Jurden, P.J.**

## I.     INTRODUCTION

Claimant-Below/Appellant Patricia Wesley ("Claimant") worked for Employer-Below/Appellee State of Delaware ("Employer") as a special education teacher in the Department of Services for Children, Youth and Their Families. While Claimant was working for Employer, one of her students physically attacked her. Claimant filed a Petition for Determination of Compensation Due with the Industrial Accident Board (the "Board"), and the Board found that Claimant had suffered compensable neck and head injuries.

Seeking recognition of a low-back injury and related medical treatments, Claimant later filed a Petition for Determination of Additional Compensation Due. Although the Board granted this Petition, it did so with certain limitations. Those limitations—which Claimant challenges on appeal—were that (1) Claimant suffered only a temporary sprain/strain to her low back and that (2) Employer's payments to Claimant would extend only to medical expenses incurred through October 30, 2018.[1] For the reasons explained below, the Board's decision is **AFFIRMED**.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

---

[1] Appellant's Reply Brief on Appeal of the Industrial Accident Board's Decision Dated December 21, 2020 ("Reply Brief") (Trans. ID. 66730027), at 9 ("[T]he Board's decision that Claimant met her burden of proof to show she suffered a lumbar spine injury in relation to the July 25, 2018 work incident, but that the lumbar spine injury was merely a sprain/strain is not supported by substantial evidence or the product of an orderly and logical deductive process."); Appellant's Opening Brief on Appeal of the Industrial Accident Board's Decision Dated December 21, 2020 ("Opening Brief") (Trans. ID. 66642441), at 16 ("Moreover, [the Board] set an arbitrary resolution date of October 30, 2018, the date Claimant saw Dr. Sommers for a second and final exam.").

2

## A.    Overview

On July 25, 2018, while working as a teacher for Employer, Claimant was punched in the head by one of her students.[2]  Claimant had been sitting in a chair, and the force of the attack caused her to fall backward and onto the floor.[3]  The incident was captured by video recording.[4]  Claimant filed a Petition for Determination of Compensation Due, and, on June 27, 2019, the Board issued a decision finding that Claimant had suffered compensable head and neck injuries.[5]  This decision is not in dispute.

On August 20, 2019, Claimant filed a Petition for Determination of Additional Compensation Due.[6]  She sought a finding that she had also suffered a compensable low-back injury and that her medical treatment for that injury was reasonable, necessary, and causally related to the work incident.[7]  Employer contested the Petition, arguing that Claimant had not suffered a compensable low-back injury or,

---

[2] *Wesley v. State of Delaware*, No. 1475026, at 2, 6 (Del. I.A.B. Dec. 21, 2020).  Because Claimant has attached the Board's decision to her Opening Brief as Exhibit A, the Court cites it using "A" citations.
[3] A2; *see* A12.
[4] *See* A5.
[5] A2.
[6] *Id.*
[7] *Id.*

if she did, that the injury was not as severe as lumbar radiculopathy.[8]  On September 1, 2020, the Board held a hearing by video conference.[9]

### B.  Testimony

#### 1.  Bruce Grossinger, D.O.[10]

Dr. Grossinger treated Claimant for the first time on August 9, 2018—about two weeks after the work incident.[11]  At this visit, Claimant told Dr. Grossinger that she had suffered prior low-back injuries in 2009 and 2016.[12]  Claimant explained, however, that she was asymptomatic prior to the work incident and had not undergone treatment with Dr. Rosenthal, a chiropractor, within the three months leading up to the work incident.[13] As a result of his August 9, 2018 evaluation, Dr. Grossinger opined that Claimant had "suffered at least a lumbar sprain and a lumbar radiculopathy with respect to the work accident of July 25th of 2018."[14]

On September 4, 2018, Dr. Grossinger again examined Claimant.[15]  He noted paravertebral muscle spasm of the lumbar spine.[16]  Dr. Grossinger also performed

---

[8] *Id.*

[9] *Id.* at 1 (noting that the hearing was held "via video conference pursuant to the Board's COVID-19 Emergency Order dated May 11, 2020").

[10] Dr. Grossinger testified by deposition on Claimant's behalf.  *See generally* Opening Brief (Ex. C).  Because Claimant has attached Dr. Grossinger's deposition transcript to her Opening Brief as Exhibit C, the Court cites it using "C" citations.

[11] A2; C7:18–23.

[12] A3; C9:15–21.

[13] A3; C9; 21–24.

[14] A3; C11:10–16.

[15] A3; C13:22–23.

[16] A3; C13:23–24.

an EMG, which revealed a moderate left L5 radiculopathy—a serious injury to the low back involving a left L5 nerve root.[17] That result correlated with Claimant's subjective complaints and clinical symptoms, including sciatica and the weakness of muscles connected to the L5 nerve root.[18] On October 10, 2018, when Claimant received a cervical injection, Dr. Grossinger noted a "significant lumber radiculopathy."[19]

On December 12, 2018 and January 5, 2019, Claimant received lumbar epidural injections.[20] According to Dr. Grossinger, the fact that Claimant needed a second injection confirmed that Claimant had suffered lumbar radiculopathy; that is, had Claimant not suffered lumbar radiculopathy, a second injection would have been unnecessary.[21]

On January 17, 2019, Claimant underwent another exam with Dr. Grossinger.[22] A note from this exam indicated that Claimant had benefited 50 percent as a result of her second lumbar epidural injection despite Claimant's reporting her pain as an 8 out of 10.[23] The note further referenced severe weakness

---

[17] A3; C14:9–17.
[18] A3; C14:18–15:2.
[19] A3–4; C12:10–17.
[20] A4; C15:21–16:1.
[21] A4; C16:2–7.
[22] A4; C17:10–11.
[23] A4; C17:1–6.

in Claimant's left leg and foot, palpation of Claimant's lumbar spine, and rigid and hypertonic lumbar facet joints and SI joints.[24]

To prepare for his deposition, Dr. Grossinger reviewed a report of a lumbar MRI that Claimant had undergone after the work incident.[25]  According to Dr. Grossinger, the report indicated that Claimant had suffered an aggravation of multilevel degenerative joint disease and multilevel lumbar osteophytes.[26]

On January 7, 2020, Claimant again visited Dr. Grossinger.[27]  Dr. Grossinger's note from that visit referenced restriction of the lumbar spine, weakness of the lower extremities, and positive straight leg raising and sitting root nerves.[28] Those findings indicated ongoing focal neurological deficits that were consistent with continuing low-back pain and difficulty in performing daily activities.[29]

Due to the COVID-19 pandemic, Claimant's final visit with Dr. Grossinger was on February 25, 2020.[30]  At that visit, Dr. Grossinger noted continuing low-back pain spreading into the buttocks and the hips.[31]

---

[24] A4; C17:10–18.
[25] *See* A4; C17:20–21.
[26] A4; C17:20–23.
[27] A5; C26:15–16.
[28] A5; C26:18–22.
[29] A5; C27:3–7.
[30] A5; C27:14–19.
[31] A5; C27:20–23.

At his deposition, Dr. Grossinger was asked to comment on the video depicting the work incident.[32] He opined that the force with which the student struck Claimant was sufficient to jerk Claimant's spine and cause serious injury to Claimant's low back.[33]

### 2. Patricia Wesley[34]

Claimant's last visit with Dr. Rosenthal prior to the work incident was on May 30, 2018.[35] Dr. Rosenthal's note from that visit contained no references to any issue involving Claimant's low back.[36] Yet the "objective" section of the note stated that there were positive findings of, among other things, the L5.[37] On July 26, 2018, the day after the work incident, Claimant began feeling low-back pain and visited Dr. Rosenthal, who treated her.[38] Dr. Rosenthal's note from this visit did reference low-back pain.[39]

### 3. William Sommers, D.O.[40]

---

[32] A5; C28:8–29:7.
[33] A5; C29:1–7.
[34] Claimant testified at the hearing. Opening Brief (Ex. E), at 17–30. Because Claimant has attached the transcript of the Board's hearing to her Opening Brief as Exhibit E, the Court cites it using "E" citations.
[35] A7; E25:2–7, E27:4–8.
[36] A7; E27:4–11.
[37] A7; E28:1–11.
[38] A6; E19:23–20:6.
[39] A7; E27:12–17.
[40] Dr. Sommers testified by deposition on Claimant's behalf. *See generally* Opening Brief (Ex. D). Because Claimant has attached Dr. Sommers's deposition transcript to her Opening Brief as Exhibit D, the Court cites it using "D" citations.

On October 30, 2018, Dr. Sommers examined Claimant.[41] At the exam, Claimant indicated that low-back pain had "developed."[42] Dr. Sommers nonetheless found that Claimant had demonstrated full strength in all lower-extremity muscle groups.[43] Dr. Sommers also found that Claimant was not suffering from sensory loss in any lumbosacral nerve root distribution and that Claimant's reflexes, including ankle reflexes, were preserved and symmetric.[44] In other words, Dr. Sommers found no objective evidence suggesting lumbosacral radiculopathy.[45] Dr. Sommers also noted that his findings did not evidence an L5 radiculopathy, contradicting Dr. Grossinger's EMG findings.[46]

Dr. Sommers also discussed a more general problem with EMGs.[47] According to Dr. Sommers, when the physician who performs an EMG also interprets it, there is a risk that the physician will identify issues that support the course of treatment that the physician is about to conduct.[48] Dr. Sommers believed that it is better to have an independent provider perform the EMG—or at least corroborate its findings.[49]

---

[41] A10; D27:2–3.
[42] A10; D27:10–14.
[43] A10; D27:19–28:2.
[44] A10; D28:3–8.
[45] A10; D28:14–17.
[46] A10; D29:2–8.
[47] A9; D13:4–15.
[48] A9; D13:4–9.
[49] A9; D13:9–14.

Dr. Sommers also reviewed the findings of the December 7, 2018 MRI that Claimant had undergone.[50] In Dr. Sommers's view, none of those findings were necessarily acute.[51] In fact, they were characteristic of a person in her fifties.[52]

Dr. Sommers then reviewed the note that Dr. Grossinger took at the January 17, 2019 exam.[53] According to Dr. Sommers, if everything that Dr. Grossinger described was accurate, then Claimant should have had difficulty walking; Dr. Grossinger did not document this issue.[54]

On January 21, 2020, Dr. Sommers examined Claimant for the second and final time.[55] The sensory and strength components of the exam were normal.[56] Dr. Sommers did not observe any issues with Claimant's gait, and Claimant was not using an assistive device to help her walk.[57]

Asked to give his ultimate opinion, Dr. Sommers concluded that he had found no evidence that Claimant had suffered *any* injury to her low back, let alone lumbosacral radiculopathy.[58] Dr. Sommers summarized his basis for this conclusion as follows:

---

[50] A9; D14:21–23.
[51] A9; D15:10–13.
[52] A9; D15:13–16.
[53] A9; D16:20–18:12.
[54] A9; D17:10–18:9.
[55] A11; D32:15–16.
[56] A11; D35:15–17.
[57] A11; D35:17–19.
[58] A11; D38:9–14.

9

Clinically, I found no evidence for lumbosacral radiculopathy as I reviewed the clinical findings, including motor, sensory, reflex examinations, sitting root tension signs, straight leg raise maneuver. I mentioned my skepticism concerning the findings on the EMG/nerve conduction study, the relatively minor findings on the MRI scan of the lumbar spine, and the fact that on the initial encounter with Ms. Wesley, really, lumbosacral spine complaints were rather minor, perhaps virtually nonexistent in terms of the complaints she was expressing related to the accident.[59]

On cross-examination, Dr. Sommers conceded that, based on his recollection of the video of the work incident, the attack caused Claimant to lurch backward in her chair.[60] Dr. Sommers also conceded that even though he had opined that Claimant had suffered no low-back injury, it was "theoretically possible that [Claimant] could have suffered a mild strain/sprain-type injury to the back."[61]

## C. Board Decision

After noting that Claimant bore the burden of proof,[62] the Board declared that "Claimant ha[d] only met her burden of proof to show that she suffered a lumbar sprain/strain injury in relation to the July 25, 2018 work accident."[63] In support of this conclusion, the Board pointed to the following evidence: (1) "Dr. Sommers acknowledged that it appeared that Claimant lurched in her chair during the incident," (2) Claimant "had documented low back complaints within 24 hours of

---

[59] D38:18–39:8; *see also* A11–12.
[60] A12; D42:22–43:1.
[61] D57:9–11; *see also* A13.
[62] A14 (citing 29 *Del. C.* § 10125(c)).
[63] A14–15.

10

this incident," and (3) "Dr. Sommers conceded that it is theoretically possible that claimant suffered a sprain/strain injury in relation to this incident."[64]

But the Board was unwilling to find that Claimant's injury was either ongoing or more severe than a sprain/strain.[65] It found Dr. Sommers credible in rebutting the bases on which Dr. Grossinger had found lumbar radiculopathy.[66] Although the Board favored Dr. Sommers's testimony, it was not willing to find—as Dr. Sommers did—that Claimant had suffered no low-back injury whatsoever.[67] Instead, for the reasons noted above, the Board gave "Claimant the benefit of the doubt that she might have suffered a minor low back injury in relation to this incident, particularly given her documented report of low back symptoms within a day of the incident."[68] As compensation, the Board ordered Employer to pay "[a]ny outstanding lumbar spine medical expenses regarding [the] temporary lumbar strain/sprain condition from the time of the July 25, 2018 work accident through October 30, 2018."[69]

## III. STANDARD OF REVIEW

---

[64] A15.

[65] A15.

[66] *See e.g.*, A15 ("Dr. Sommers was convincing that Dr. Rosenthal's records from May 30, 2018 and July 26, 2018 are identical in terms of Claimant's objective lumbar spine findings, which is not suggestive of a significant injury in relation to this incident."); *id.* ("Dr. Sommers's October 30, 2018 [defense medical examination] reflected normal lumbar and lower extremity findings."); *id.* at 16 ("There was no objective evidence of lumbosacral radiculopathy on exam meaning that, despite the EMG findings, clinically an L5 radiculopathy was not demonstrated."); *see generally* A15–16.

[67] A16.

[68] A16–17.

[69] A17.

11

"The review of an Industrial Accident Board's decision is limited to an examination of the record for errors of law and a determination of whether substantial evidence exists to support the Board's findings of fact and conclusions of law."[70] "Substantial evidence" is less than a preponderance of the evidence but more than a "mere scintilla."[71] Specifically, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[72] The Court may not "weigh the evidence, determine questions of credibility, or make its own factual findings."[73] "The Superior Court . . . must view the record in the light most favorable to the prevailing party below."[74]

## IV. DISCUSSION

### A. The Board's Finding that Claimant Suffered Only a Sprain/Strain

1. The Board's Finding that Claimant Suffered Only a Sprain/Strain Is Supported by Substantial Evidence and Is Not Arbitrary or Capricious

Claimant argues that the Board's finding that she suffered only a sprain/strain to her low back was arbitrary and capricious and was not supported by substantial evidence.[75] This is so, Claimant contends, because the Board rejected both experts'

---

[70] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotations omitted) (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

[71] *State v. Dalton*, 878 A.2d 451, 454 (Del. 2005) (citation omitted).

[72] *Washington v. Del. Transit Corp.*, 226 A.3d 202, 210 (Del. 2020) (internal quotation marks omitted) (quoting *Powell v. OTAC, Inc.*, 2019 WL 6521980, at *4 (Del. Dec. 4, 2019)).

[73] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (internal quotation marks omitted) (quoting *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[74] *Wyatt v. Rescare Home Care*, 81 A.3d 1253 (Del. 2013) (citation omitted).

[75] Reply Brief, at 7.

opinions and "instead came up with some speculative combination."[76]  And this "speculative combination" that the Board "came up with" (the sprain/strain finding) was a merely "*possible* scenario" that Dr. Sommers "only conceded to under questioning."[77]  By following Dr. Sommers's speculative concession, Claimant concludes, the Board failed to follow Delaware precedent, which says that expert medical opinions must be stated in terms of a medical probability or certainty.[78]

In support, Claimant relies on two decisions, neither of which involved the Industrial Accident Board:  the Supreme Court of Delaware's decision in *Oxendine v. State* and this Court's decision in *Minner v. American Mortgage & Guaranty Company*.[79]  Claimant quotes *Oxendine* for a number of proposition, such as that "a doctor cannot base his expert opinion on speculation and conjecture," "[a] doctor's testimony that a certain fact is possible is no evidence at all," and "a doctor's testimony can only be considered evidence when his conclusions are based on reasonable medical certainty that a fact is true or untrue."[80]  And Claimant quotes *Minner* for the proposition that "[a] medical expert may not speculate as to the

---

[76] *Id.*
[77] Opening Brief, at 16.
[78] *See id.* at 16–17 ("In ruling Claimant only suffered a sprain/strain to the low back . . . , the Board failed to follow [Delaware] precedent.  The Board's ruling was a result of speculation and the combination of medical testimony."); *id.* at 16 (first quoting *Oxendine v. State*, 528 A.2d 870, 873 (Del. 1986); and then quoting *Minner v. American Mortg. & Guar. Co.*, 791 A.2d 826, 867 (Del. Super. Ct. 2000)).
[79] *Id.* at 16 (first quoting *Oxendine v. State*, 528 A.2d 870, 873 (Del. 1986); and then quoting *Minner v. American Mortg. & Guar. Co.*, 791 A.2d 826, 867 (Del. Super. Ct. 2000)).
[80] *Id.* (quoting *Oxendine*, 528 A.2d at 873).

possible medical causes or consequences, and must limit the testimony to causes or consequences that are reasonably probable."[81]

But the Court need not delve into these matters. The Court must merely determine whether the Board's factual finding—that Claimant suffered a sprain/strain—is based on substantial evidence.[82] The Supreme Court of Delaware has explained that "the Superior Court may only overturn a factual finding of the Board when there is no satisfactory proof in favor of such a determination."[83] Even if expert testimony shows nothing more than a "mere possibility," the Board's award may be upheld as long as it is supplemented by "other credible evidence."[84] The Board "has expressly been entrusted with the power to find the facts," and, for that reason, "its fact finding must be affirmed if supported by any evidence, even if the reviewing court thinks the evidence points the other way."[85]

Here, the Board's factual finding that Claimant suffered a sprain/strain "must be affirmed." Even setting aside Dr. Sommers's speculative testimony, the Board's

---

[81] *Id.* (quoting *Minner*, 791 A.2d at 867).

[82] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (quoting *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016)).

[83] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1259 (citing *Steppi v. Conti Elec., Inc.*, 2010 WL 718012 (Mar. 16, 2010)).

[84] *Id.* (internal quotation marks omitted) (quoting *General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del. 1960)). The Court recognizes that the Supreme Court in *Wyatt* has in mind expert testimony about a "mere possibility" of *causation*, not of what the nature of the injury is, which is the issue here. But, as will be explained, that distinction is not material to the Court's analysis in this case.

[85] *Id.* at 1259–60 (quoting *Steppi*, 210 WL 718012, at *3).

14

finding is based on substantial evidence: (1) Dr. Sommers's testimony that Claimant appeared to have lurched in her chair after she was struck and (2) the fact that Claimant complained of low-back pain within 24 hours of the incident.[86] These findings led the Board to conclude that "it was reasonable for Claimant to have suffered a minor lumbar spine injury" from the work incident.[87] Accordingly, the Court concludes that the Board's finding that Claimant suffered a low-back sprain/strain is supported by substantial evidence and, hence, is not arbitrary or capricious.[88]

### 2. The Board Did Not Err by Dismissing Dr. Grossinger's Opinion

As noted above, part of Claimant's challenge to the Board's sprain/strain finding is that the Board failed to wholly accept either expert's opinion. The Board did not follow Dr. Sommers's opinion—that Claimant suffered no low-back injury at all. Nor did the Board follow Dr. Grossinger's opinion in concluding that Claimant suffered lumbar radiculopathy—or at least an injury more severe than a sprain/strain. Because "[i]n Delaware, treating doctors may be afforded great

---

[86] A15.

[87] A16.

[88] *Ren Centre L.L.C v. New Castle Cty. Off. of Fin.*, 2016 WL 399328, at *1 (Del. Super. Ct. Jan. 29, 2016) (quoting *Brandywine Innkeepers, L.L.C. v. Bd. of Assessment Review of New Castle Cty.*, 2005 WL 1952879, at *3 (Del. Super. Ct. June 3, 2005)) ("A decision is arbitrary and capricious if it is 'willful and unreasonable and without consideration or in disregard of the facts.'"). Because the Board supported its finding with substantial evidence from the record, its finding is not arbitrary or capricious.

deference,"[89] Claimant argues that the Board erred by "dismiss[ing] Dr. Grossinger's opinion despite hi[s] being Claimant's treating physician."[90]

But the Board was not bound to accept Dr. Grossinger's opinion. First, as a general matter, it is within the Board's exclusive domain to weigh the evidence, determine the credibility of witnesses, and resolve any conflicts in the testimony.[91] And even when the Board hears testimony from a claimant's treating physician, "[t]he weight to be given to the expert testimony of a treating physician . . . is for the Board to determine, as the trier of fact."[92] So "it can be appropriate for the Board to accord more weight to a non-treating expert over a conflicting treating expert, provided [that] substantial evidence is proffered."[93] Here, the Board explained in detail why it found the testimony of Dr. Sommers more convincing than that of Dr. Grossinger.[94] In light of this explanation, the Court will not overturn the Board's credibility determination.

3.      The Board Did Not Fail to Afford Claimant the Benefit of the Doubt

Claimant's final argument related to the Board's sprain/strain finding is that the Board failed to afford Claimant the benefit of the doubt, violating the spirit of

---

[89] Opening Brief, at 15 (citing *Diamond Fuel Oil v. O'Neal*, 734 A.2d 1060 (Del. 1999)).
[90] *Id.* at 15–16.
[91] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019) (quoting *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).
[92] *Clements v. Diamond State Port Corp.*, 831 A.2d 870, 877 (Del. 2003).
[93] *Noel-Liszkiewicz v. La-Z-Boy, Inc.*, 2012 WL 4762114, at *5 (Del. Super. Ct. Oct. 3, 2012).
[94] A15–16.

16

the Workers' Compensation Act.[1] Claimant asserts that the Act "is to be interpreted liberally so as to resolve any reasonable doubts in favor of the worker," which, according to Claimant, the Board failed to do.[1]

But none of the issues in the proceeding involved an interpretation of the Act, so there were no reasonable doubts to resolve. If Claimant means to argue more generally that the Board should have viewed the evidence in a light more favorable to her, then the Court is constrained to note that the Board did, in fact, do so. The Board was inclined to follow the opinion of Dr. Sommers, who opined that Claimant suffered no low-back injury whatsoever. But rather than adopt that opinion, the Board concluded that it had found enough evidence to give "Claimant the benefit of the doubt that she might have suffered a minor low back injury in relation to this incident."[95]

**B.      The Board's Selection of October 30, 2018 as the Resolution Date for Employer's Payments Related to the Sprain/Strain Is Not Arbitrary**

Claimant's final argument is that the Board "set an arbitrary resolution date of October 30, 2018, the date [on which] Claimant saw Dr. Sommers for a second and final exam."[96] As an initial matter, the Court notes that October 30, 2018 was the date of Dr. Sommers's *first* exam; January 21, 2020 was the date of Dr. Sommers's second and final exam. Regardless, the Board's selection of October 30,

---

[95] A16–17.
[96] Opening Brief, at 16.

2018 as the resolution date was supported by evidence in the record. The Board found that the exam that Dr. Sommers performed on that day revealed no objective findings of a low-back injury. Because the Board found Dr. Sommers's testimony credible, it reasonably concluded that the results of the October 30, 2018 exam meant that no low-back injury existed as of that date. Accordingly, October 30, 2018 was not an arbitrary date for the Board to select as the resolution date for Employer's payments.

## V. CONCLUSION

In sum, the Court concludes that the Board's finding that Claimant proved a temporary low-back sprain/strain is supported by substantial evidence and is not arbitrary and capricious. The Court further concludes that the Board's selection of October 30, 2018 as the resolution date for Employers payments related to Claimant's low-back injury is not arbitrary and, on the contrary, is supported by evidence in the record. Accordingly the Board's December 21, 2020 decision is **AFFIRMED**.

**IT IS SO ORDERED.**

*Jan R. Jurden*

_____
Jan R. Jurden, President Judge

cc:  Prothonotary