# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SHANEEDA SHAW-HICKS, | : | |
| | : | |
| Appellant, | : | |
| | : | C.A. No. K25A-06-001 JJC |
| v. | : | |
| | : | |
| BAYADA HOME HEALTH CARE, | : | |
| | : | |
| Appellee. | : | |

Submitted: October 29, 2025
Decided:   December 16, 2025

## **ORDER**

On this 16th day of December 2025, having considered Appellant Shaneeda Shaw-Hicks' appeal of the decision of the Industrial Accident Board (the "Board" or the "IAB"), and the response filed by Appellee Bayada Home Health Care ("Bayada"), it appears that:

1.     Bayada employed Ms. Shaw-Hicks as a home health aide.  In April 2023, a Bayada patient threw an iPad at Ms. Shaw-Hicks and struck her in the right eye,  causing injury.[1]  Ms. Shaw-Hicks then filed a workers' compensation claim and later presented petitions to the IAB seeking compensation for permanent impairment and disfigurement.[2]  The Board decided the permanent impairment and disfigurement petitions adversely to her.  She now appeals that combined decision.

2.  Ms. Shaw-Hicks originally sought treatment at Bayhealth Occupational Health on the day of injury and was referred to an optometrist, Dr. Semeneck, at Delaware Eye Care.[3]  Dr. Semeneck examined her on the same day of the injury and

---

[1] *Shaw-Hicks v. Bayada*, No. 1541059, at 2 (Del. I.A.B. June 18, 2025) [hereinafter, the Court will refer to the IAB's decision as "IAB decision at . . . "].

[2] *Id.*

[3] Dr. John W. Butler Deposition at 8:1-6 [hereinafter the Court will refer to the Dr. Butler's deposition as "Butler Dep. at . . ."].

concluded that Ms. Shaw-Hicks' "[r]etina looks great. No cells or floaters."[4]   Her complaints persisted, however.  As a result, Dr. Semeneck referred her to Dr. John Butler, an ophthalmologist.[5]  Ms. Shaw-Hicks contends that, when she first visited Dr. Butler, Dr. Butler's staff led her to believe that he was certified under 19 *Del. C.* § 2322D to treat her without preauthorization.[6]  Ms. Shaw-Hicks later learned, however, that Dr. Butler was not.[7]

3.      At the Board hearing, Ms. Shaw-Hicks presented Dr. Butler's deposition testimony in support of her claims for permanent impairment and disfigurement, which was the sole expert testimony offered at the hearing.[8]  Dr. Butler testified in his deposition that he treated Ms. Shaw-Hicks five times.[9]  The doctor then recounted his observations and findings from each visit.

4.      He first saw her six to eight weeks after the accident.  At that time, he noticed a "small scar at the nine o'clock position in the retina periphery."[10]  Dr. Butler testified, however, that he was unable to determine whether the scar was caused by the accident or pre-existed it.[11]  He nevertheless confirmed that Ms. Shaw-Hicks had subjective complaints of eye pain and a tear-shaped floater in her eye.[12]  But, Dr. Butler observed no retinal tears, detachments, or dialysis.[13]  At Dr. Butler's second examination, he opined after examining her that "everything looked healthy . . . [a]nd other than that small [retinal] scar, I didn't find any abnormalities …."[14]  At a third exam, Ms. Shaw-Hicks continued to complain about eye pain and the

---

[4] Butler Dep. at 8:8-14.
[5] *IAB Decision* at 2.
[6] Industrial Accident Board Hearing Transcript at 11:2-10 [hereinafter the Court will refer to the certified record before the Board as "R. at . . ."].
[7] R. at 9:18-10:4; *see also* D.I. 9 at 1.
[8] R. at 24:10-21.
[9] Butler Dep. at 7:7-10.
[10] *Id.* at 8:22-9:23.
[11] *Id.* at 9:23-10:2.
[12] *Id.* at 10:9-14.
[13] *Id.* at 12:19-22
[14] *Id.* at 14:9-11.

2

floater in her eye, but Dr. Butler found everything to be "completely normal" otherwise.[15] He then saw Ms. Shaw-Hicks two additional times. According to Dr. Butler, neither of those visits changed his conclusion that Ms. Shaw-Hicks could return to her pre-injury level of work.[16] At the end of Dr. Butler's direct examination, he stated that his opinions were offered to a reasonable degree of medical certainty.[17]

5. Dr. Butler agreed that Ms. Shaw-Hicks complained of eye pain and the floater in all five of their meetings.[18] He also agreed that Ms. Shaw-Hicks' visual acuity declined over the course of the five visits, beginning with 20/20 vision at the first three visits, then 20/25 vision on the fourth visit, and 20/40 vision on the fifth visit.[19] He could not, however, identify an "anatomic physiologic reason for [her] decreased vision," and he declined to offer an opinion regarding whether Ms. Shaw-Hicks' vision would return to 20/20.[20] Critically, for purposes of this appeal, the doctor clarified that he could not state to a reasonable degree of medical certainty that the decrease in Ms. Shaw-Hicks' visual acuity was caused by her work accident.[21] Nor would he state to a reasonable degree of medical certainty that the work accident caused the floater, the small retinal scar, or any other harm.[22] To that end, he explained that he could neither rule the floater in or out as a work-related injury because it was a purely subjective symptom for which he could identify no objective medical cause.[23]

---

[15] *Id.* at 15:3-8.
[16] *Id.* at 18:18-22, 22:1-7.
[17] *Id.* at 23:21-24:2.
[18] *Id.* at 24:12-20.
[19] *Id.* at 31:10-20.
[20] *Id.* at 34:22-35:1.
[21] *Id.* at 39:3-8.
[22] *Id.* at 39:9-18.
[23] *Id.* at 40:1-13.

6.     The Board then issued its decision denying both petitions on June 24, 2025.  There, the Board found that Ms. Shaw-Hicks failed to meet her burden because she presented insufficient evidence to support her petitions.[24]  Nevertheless, the Board explained that Ms. Shaw-Hicks remained free to refile the petitions within the statute of limitations if she secured another doctor to provide testimony to support her claims.[25]  Ms. Shaw-Hicks now appeals the Board's decision denying both petitions.

7.     An IAB appeal to the Superior Court is on the record.[26]  On appeal, the scope of review is limited to whether the Board's factual findings were supported by substantial evidence and free from legal error.[27]  Substantial evidence is a quantum of evidence sufficient to support a reasonable mind when making a finding.[28]  It is further quantified as being "more than a scintilla but less than a preponderance of the evidence."[29]  As an overarching principle, the Court does not determine questions of credibility or make its own factual findings when reviewing an IAB decision on appeal.[30]

8.     Here, the Board properly placed the burden on Ms. Shaw-Hicks to demonstrate that she suffered work-related permanent impairment and disfigurement.[31]  The Board also correctly recognized the necessity that Ms. Shaw-Hicks present expert medical testimony to support her permanent impairment petition.[32]  The Board further correctly recognized that it should visually observe her for purposes of evaluating disfigurement.  For the reasons to follow, the record

---

[24] *IAB Decision* at 9.

[25] *Id.* at 8.

[26] 29 *Del. C.* § 10142(c).

[27] *Wyatt v. Rescare Home Care*, 81 A.3d 1253, 1258 (Del. 2013).

[28] *Ferrell v. City of Wilmington*, 2025 WL 753378, at *2 (Del. Super. Mar. 10, 2025).

[29] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988).

[30] *Washington v. Del. Transit Corp.*, 226 A.3d 202, 210 (Del. 2020).

[31] *Walt v. Del. Home & Hosp. for Chronically Ill*, 930 A.2d 929, 2007 WL 1947370, at *2 (Del. Aug. 5, 2007) (TABLE).

[32] *IAB Decision* at 9.

contains substantial evidence to support the Board's findings that she failed to meet her burdens regarding permanent impairment and disfigurement.

9.      More granularly as to permanent impairment, the Board found it fatal to her claim that Dr. Butler refused to testify to a reasonable degree of medical probability that Ms. Shaw-Hicks' ongoing complaints were caused by her work accident.[33]  As the Delaware Supreme Court has explained, medical testimony in an IAB hearing regarding the mere possibility that an accident caused an injury does not meet a claimant's burden of persuasion.[34]  Here, Dr. Butler acknowledged that Ms. Shaw-Hicks' ongoing injuries and complaints *may* be permanent and *may* have been caused by her accident – but, his testimony stopped there.[35]  Accordingly, substantial evidence supported the Board's finding that Ms. Shaw-Hicks failed to meet her burden regarding permanent impairment.

10.     Turning to disfigurement, 19 *Del. C.* § 2326(f) requires the Board to "award proper and equitable compensation for serious and permanent disfigurement to any part of the human body … *provided that such disfigurement is visible and offensive when the body is clothed normally*."[36]  To this end, the statute expressly contemplates that the IAB may rely on its own visual observations, at least in significant part.  Indeed, the Superior Court has regularly affirmed IAB disfigurement decisions based on the Board's personal observations of a claimant's injuries.[37]

---

[33] *IAB Decision* at 8.

[34] *See General Motors v. Freeman*, 164 A.2d 686, 688 (Del. 1960) ("We agree that an award cannot stand on medical testimony alone, if the medical testimony shows nothing more than a mere possibility that the injury is related to the accident.").

[35] R. at 38:20-40:13.

[36] 19 *Del. C.* § 2326(f) (emphasis added).

[37] *See, e.g.*, *Jones v. Wade Insulation*, 1996 WL 527321, at *4 (Del. Super. July 23, 1996) (affirming a Board decision because "the record clearly shows that the Board made its decision after actual physical observation of Claimant's injury and after considering Claimant's testimony"); *Tabor v. H. O. Kline Transp.*, 1991 WL 15192, at *1 (Del. Super. Jan. 16, 1991) (affirming the Board's decision because it, "as the trier of fact, was in the better position to assess the claim after viewing claimant's disfigurement").

11.     In this case, the Board's denial of Ms. Shaw-Hicks' disfigurement petition was supported by the record for three reasons.  First, the Board permissibly based its disfigurement decision on its personal observation of Ms. Shaw-Hicks.[38] It observed none when doing so.  Second, when evaluating the evidence, the Board acknowledged and applied the appropriate four-factor test articulated in *Colonial Chevrolet, Inc. v. Conway* – which is the accepted standard for evaluating the amount of compensation due for disfigurement.[39] Here, the IAB applied the *Conway* factors and permissibly found no amount due Ms. Shaw-Hicks.  Third and finally, Dr. Butler testified that the retinal scar, hidden to the naked eye, did not qualify as a "disfigurement," and he further refused to opine that the retinal scar was even related to the work accident.[40]

12.     Ms. Shaw-Hicks also challenges the IAB's decision because she contends that Dr. Butler's lack of certification under 19 *Del. C.* § 2322D should have led the Board to decide in her favor.  She misunderstands Section 2322D's effect because it is not a general licensing statute as she contends.   To the contrary, a Section 2322D certification merely provides that a physician may be reimbursed for bills without prior authorization.  In this case, the Board hearing did not address unpaid medical bills;  rather, it focused only on the issues of permanent impairment and disfigurement.[41]  Furthermore, neither Bayada nor the IAB had the responsibility or ability to police Dr. Butler's certification status in these proceedings.  As a result, the Board did not commit legal error by declining to award her compensation because her doctor was not certified to receive payment of her bills without preauthorization.

---

[38] *IAB Decision* at 9.

[39] C.A. No. 79A-FE-13, 1980 Del. Super. LEXIS 145, at *2 (Del. Super. April 28, 1980); *see also Martinez v. Gen. Metalcraft, Inc.*, 919 A.2d 561, 2007 WL 521906, at *2 (Del. Feb. 21, 2007) (TABLE) (recognizing that the *Conway* factors are an "accurate and appropriate interpretation of the statutory mandate" regarding disfigurement).

[40] *IAB Decision* at 9; *see also* Butler Dep. at 9:21-10:3.

[41] R. at 11:22-12:8.

13.     As to Ms. Shaw-Hicks' last argument, she challenges the propriety of Bayada's efforts when defending the Board's decision on appeal.  The IAB and its members are statutorily prohibited from being named as parties in a Superior Court administrative appeal.[42]  Here, she misunderstands the identity of the proper party in interest.  Namely, Bayada, as her employer, was the party with standing to contest her claims before the IAB.   It remains the proper party in interest in this appeal.

14.     As a final note, the Court sympathizes with Ms. Shaw-Hicks because the record supports a fair inference that Dr. Butler misunderstood (1) the level of certainty necessary to offer an opinion in a workers' compensation case, and (2) the nature of the evidence that he could use to form the bases for his opinions. Nevertheless, Ms. Shaw-Hicks bore the burden of persuasion on these issues and could not have prevailed on this record given the limits of his testimony.  Going forward, neither the Board's decision, nor this Court's decision on appeal, will prejudice Ms. Shaw-Hicks' ability to refile her petitions with the supportive opinions of another physician, provided she does so within the applicable statute of limitations.

**WHEREFORE**, the decision of the Industrial Accident Board is **AFFIRMED.**

**IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

*Via File & ServeXpress*
*U.S. Mail to Appellant Shaneeda Shaw-Hicks*

---

[42] *See* 19 *Del. C.* § 2349 (providing that "[n]either the Board nor any member of the Board shall be named as a party to the appeal").

7