GENERAL MOTORS CORPORATION, a corporation of the State of Delaware, Defendant Below, Appellant, v. JOSEPH FREEMAN, Claimant Below, Appellee.

(*November* 4, 1960.)

SOUTHERLAND, C. J., WOLCOTT and BRAMHALL, J. J., sitting.

*Rodney M. Layton* (of the firm of Richards, Layton and Finger) for defendant below, appellant.

*James M. Tunnell, Jr.* (of the firm of Morris, Nichols, Arsht and Tunnell), *James P. D'Angelo* and *O. Francis Biondi* for claimant below, appellee.

Supreme Court of the State of Delaware, No. 16, 1960.

BRAMHALL, J.:

This appeal relates to the sufficiency of the evidence presented before the Industrial Accident Board in making an award in favor of claimant for injuries sustained to his eye.

On November 16, 1955, claimant, while in the employ of defendant, was assigned to the burning of trash on the plant dump. While so engaged the wind changed, causing the whole dump to catch fire and emit a great deal of smoke. Claimant made somewhat strenuous efforts for quite some time to put

out the fires. Eventually the smoke caused the claimant to cough somewhat violently. It also got in his eyes. In wiping his eyes with the back of his glove, he caused the entry of a foreign body into his right eye. Claimant complained to his foreman and requested permission to go to the plant hospital. The foreman directed him to wait until after they were through work. Claimant went to the hospital when he was through work. He received treatment from the nurse on that day and from the doctor and the nurse on the following day. Foreign substances were removed from the eye by both the nurse and the doctor. A patch was applied to the eye, which claimant wore for five days. During this period claimant was directed to report to the doctor's office at the hospital every two hours for the purpose of receiving drops in his eye. After the removal of the patch, "it looked like a four-leaf clover in front of me". Subsequently, in February, 1956, while claimant was driving his car to work, a black spot appeared in front of his eye. Upon his arrival at the plant claimant went to the infirmary to see the plant physician. The plant physician referred claimant to Dr. LaMotte, an ophthalmologist, advising him that he would eventually have to be hospitalized. For financial reasons claimant put off hospitalization. He saw Dr. LaMotte on November 5, 1956, at which time he was advised by Dr. LaMotte that he had a detached retina in his right eye. Immediate surgery was advised. The operation occurring about a week later failed to aid claimant's vision and he is now totally blind in his right eye.

The medical evidence was that the claimant had myopic type eyes, a condition which the medical experts stated would predispose his eyes to retinal detachment. In reply to hypothetical questions as to whether the smoke, or chemical, the violent rubbing of the eyes, together with sometimes violent coughing, could have caused the detached retina, these experts stated, in substance, that is was medically possible that trauma could have caused retinal detachment, but that it was one of many possible causes. Dr. LaMotte, an expert called by

defendant, testified that the most common cause of retinal detachment is in an eye in which the retina is already diseased, in which case a relatively innocuous traumatic incident may possibly contribute to the detachment of the retina. He stated that neither the smoke nor the entry of the foreign body into the eye could have caused it directly. He could not say that the violent rubbing of the eye might not have been related to it. He further testified that the initial tear or break in the retina occurred quite some time prior thereto, very likely six months to a year. He stated that the process of the detachment of the retina does not occur precipitately except rarely in cases of severe trauma, that it is usually a slowly developing process. He admitted that where, as here, there was an immediate injury and an immediate impairment of the vision after the occurrence of the trauma, it would be more likely that the condition was a result of the trauma.

The Industrial Accident Board found that the condition of the eye was the result of the claimant's accident and made an award in his favor. Defendant appealed to the Superior Court. That Court held that there was sufficient evidence to sustain the findings of the Board. Defendant appeals to this Court.

The sole question is: Was the evidence presented before the Industrial Accident Board sufficient to sustain its action?

Defendant contends that the nature of the injury was such that the question as to whether or not this injury was the result of the trauma must necessarily be determined by medical testimony. Defendant asserts that since the force of that testimony was to the effect that the injury sustained by claimant was at most a possibility—not a probability—that it occurred as a result of the trauma, the evidence was insufficient. Calling attention to the fact that in some jurisdictions proof of obscure causation shall not be less than an unqualified opinion that causation exists, defendant concedes that medical testimony to the effect that causation is probable

meets the standard of certainty used by reasonable men in the conduct of their affairs. Claimant replies that in such case expert testimony may be supplemented by lay testimony and that, where the lay testimony shows that the injury was the uninterrupted and direct result of the trauma, it is not necessary to prove by medical testimony alone that the injury was at least the probable result of the trauma. Claimant avers that the lay testimony presented in this case was sufficient to raise this inference from a "possibility" to a "probability".

It is undoubtedly correct, as the Superior Court stated, that the etiological factors involved in the initiation and progress of a detachment of the retina are not matters which fall within the common experience and capability of lay persons, nor within their capacity to judge in the absence of expert medical assistance. We do not agree, however, with defendant's contention, or with the authorities which he cites, that the causal connection must in all such cases be proved solely by the testimony of medical experts to the extent that the causal connection amounts to a "probability" that the injury was the result of the trauma. We agree that an award cannot stand on medical testimony alone, if the medical testimony shows nothing more than a mere possibility that the injury is related to the accident. See cases cited in *Annotations to* 135 *A. L. R.* 516, *Sufficiency of Expert Testimony to Establish Causal Relationship Between Accident and Physical Condition or Death.* But this does not mean that in every case the testimony of medical experts must show at least a probability that the injury was caused by the trauma. If the testimony of these experts should show that the injury was possibly the result of the trauma and such testimony is supplemented by other creditable evidence tending to show that the injury occurred directly after the trauma and without interruption, we think that such evidence would be sufficient to sustain an award. It has been so held by the appellate courts in a number of states. *DeFilippo's Case,* 284 *Mass.* 531, 188 *N. E.* 245; *Josi's Case,* 324 *Mass.* 415, 86 *N. E.* 2d 641;

*Glen L. Wigton Motor Co. v. Phillips*, 163 *Okl.* 160, 21 *P.* 2d 751; *Atkinson v. United States Fidelity & Guaranty Co., Tex. Civ. App.*, 235 *S. W.* 2d 509; *Blackfoot Coal & Land Corp. v. Cooper*, 121 *Ind. App.* 313, 95 *N. E.* 2d 639; *Indiana Power & Water Co. v. Miller*, 73 *Ind. App.* 521, 127 *N. E.* 837; *Industrial Comm. v. Royal Indemnity Co.*, 124 *Colo.* 210, 236 *P.* 2d 293; *Schroeder v. Western Union Telegraph Co., Mo. App.*, 129 *S. W.* 2d 917; *Moritz v. Interurban St. Ry. Co., Sup.*, 84 *N. Y. S.* 162; *Drew v. Industrial Comm.*, 136 *Ohio St.* 499, 26 *N. E.* 2d 793; *Witt v. Witt's Food Market*, 122 *Pa. Super.* 557, 186 *A.* 275; *Hartford Accident & Indemnity Co. v. Industrial Comm.*, 64 *Utah* 176, 228 *P.* 753. We do not believe that the distinction between the use of the words "possible" and "probable", and other words of a similar import, should be followed too closely. See 2 *Larson Workmen's Compensation Law*, § 80.32. It is a matter of general knowledge among those of us who are at all familiar with the testimony of physicians that at times one doctor will use words denoting "possibility" while another may use words denoting "probability" when actually they mean the same thing. We think that such testimony should be considered in the light of all the evidence, particularly where the injury occurred directly and uninterruptedly after the trauma.

In this case the undisputed facts support claimant's contention. They show that prior to the accident claimant did not have a detached retina; that he had myopic type eyes which would be predisposed to retinal detachment; that his eyesight was impaired immediately after the trauma; that he promptly received medical treatment; that he was operated upon for this condition. The fact that claimant at the time of the trauma had myopic type eyes and the fact that under such conditions a detached retina is more likely to occur makes claimant's contention more probable. The ophthalmologist called by defendant stated that such a possibility was more likely to occur where, as here, the injury was direct and uninterrupted. That witness also gave as the period of

time within which a detached retina might progress to a point resulting in the detachment of the retina as from six months to a year prior to his examination of claimant, a period corresponding roughly with the time elapsing between the occurrence of the trauma and the examination of claimant by this witness.

■■ The position of the Superior Court and of this Court on appeal is to determine only whether or not there was substantial evidence to support the findings of the Board. If there was, these findings must be affirmed. It is true that the testimony of the medical experts in this case was weak and uncertain and might well have justified the Board in reaching a contrary opinion. That question is not before us. There was evidence showing that the injury was the result of the trauma, that claimant had not suffered from this condition before and, further, that it was a direct and uninterrupted result of the accident. The Board could have accepted this evidence, as it probably did, since it was not disputed. This, in our opinion, is sufficient, in addition to the testimony of the medical experts, to sustain the findings of the Board. We do not believe that the findings of the Industrial Accident Board based upon such testimony should be disturbed.

The order of the Superior Court affirming the findings of the Industrial Accident Board is affirmed.