**Amanda WYATT, Employee Below, Appellant,**

v.

**RESCARE HOME CARE, Employer Below, Appellee.**

**No. 112, 2013.**

Supreme Court of Delaware.

Submitted: Oct. 23, 2013.

Decided: Nov. 20, 2013.

---

**10.** Del.Code Ann. tit. 11, § 4120(f)(4).

Kenneth F. Carmine, Esquire (argued) and Tiffany M. Shrenk, Esquire, Potter, Carmine & Associates, P.A., Wilmington, Delaware, for appellant.

Linda Wilson, Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The claimant-appellee and cross-appellant-appellant, Amanda Wyatt ("Wyatt" or the "Claimant"), appeals from a Superior Court judgment reversing an Industrial Accident Board (the "Board") finding that she had a compensable, work-related injury. The employer-appellant and cross-appellee-appellee is Wyatt's former employer, Rescare Home Care ("Rescare"). Wyatt raises two claims on appeal. First, she contends the Superior Court erred in reversing the Board's decision that her injury was a compensable industrial accident, since the Board's decision was based upon substantial evidence. Second, she submits that the Board erred in denying the medical expenses for her emergency back surgery.

We have concluded that the Superior Court erred in reversing the Board's decision that the Claimant had a compensable work related injury. We have also concluded that the Board properly determined that her back surgery was not compensable. Therefore, the judgment of the Superior Court is reversed.

### Facts

The facts as found by the Board are as follows. The Claimant worked for Rescare as a certified nursing assistant for four to five years before she was injured. She primarily worked with a five-year-old boy, Isaac, who was completely dependent upon her. In addition to other duties, Claimant was charged with bathing, feeding, and transferring Isaac from his chair to his stand or to the floor and back, all without assistance. The Claimant would perform transfers of Isaac throughout the day while attending to him at school, as well as at Isaac's home three days per week.

Isaac weighed about fifty-five pounds at the time of the accident.

The Claimant began experiencing lower back pain on October 21, 2010 when she bent over to pick to something up in her home. After trying to work through the pain, she was eventually forced to go to the emergency room. She was diagnosed with a pulled muscle and given a prescription for both muscle relaxers and pain medication. No tests were ordered, and the Claimant did not attempt to seek further treatment at that time.

On Friday, December 10, 2010, the Claimant began experiencing lower back pain again. She thought it was simply the result of frequent work. She did not work that weekend, and took off an additional day on Monday, December 13, 2010 to rest.

On Wednesday, December 15, 2010, the Claimant met Isaac at his school in order to resume her work duties, though her lower back pain continued. When she transferred Isaac for lunch, the Claimant's back pain ceased, but her leg went numb and she felt the urgency to urinate. She headed immediately for a restroom, and was witnessed by a school physical therapist to be dragging her left foot, which was numb. Her whole perineal area was numb when using the restroom.

The Claimant called her mother, who works for a general surgeon's office. The Claimant's mother relayed the above symptoms to Dr. Tatineni, one of the surgeons for whom the Claimant's mother works. Dr. Tatineni said that the Claimant needed to see Dr. Balapur Venkataramana ("Dr. Venkataramana"), who is a neurosurgeon, right away. When an appointment could not be had before Monday, December 20, 2010, Dr. Tatineni called Dr. Venkataramana directly, and Dr. Venkataramana agreed to see the Claimant on Friday, December 17, 2010.

While in Dr. Venkataramana's waiting room on Friday, December 17, 2010, Dr. Venkataramana's receptionist overheard the Claimant speaking to her mother about work, and informed the Claimant and her mother that Dr. Venkataramana does not take workers' compensation cases. She also informed the Claimant that if her case was a workers' compensation claim, she would have to go elsewhere for treatment. The Claimant, fearful that she would not be able to be seen immediately by another doctor, told Dr. Venkataramana that the numbness began when she woke up, rather than when lifting Isaac, in order to receive treatment.

Dr. Venkataramana sent the Claimant to have an MRI, x-rays, and blood work in the same building and told her not to leave. Subsequently, he told the Claimant to meet him the next morning, Saturday, December 18, 2010, at Beebe hospital so that he could read the MRI. During that visit, Dr. Venkataramana informed the Claimant that she needed to have surgery the next day. Dr. Venkataramana performed spinal surgery on Sunday, December 19, 2010.

After the surgery, the Claimant told Dr. Venkataramana that the onset of the numbness actually occurred while lifting Isaac at school. After reviewing the Claimant's medical history and records, including the medical examination performed by defense expert, Dr. Kevin Hanley, Dr. Venkataramana testified during his deposition that the type of work that the Claimant does caused the disc herniation, and that cauda equina syndrome was the result. Dr. Venkataramana also testified that the Claimant could not have had the disc herniation and cauda equina syndrome before December 15, 2010, because she would not have been able to work

through the pain associated with the type of injury sustained that day.

The Claimant submitted to an examination by Dr. Hanley, an expert medical witness for the defense. Dr. Hanley agreed that lifting Isaac could have caused the Claimant's injury, and also agreed that if the Claimant's testimony regarding the lifting incident on December 15, 2010 is taken as true, then a work accident caused her herniated disc rupture. Because the Claimant initially did not tell Dr. Venkataramana about the incident, however, Dr. Hanley opined that her injury was more likely caused by gradual onset due to sneezing, standing up, or bending over at home. Furthermore, Dr. Hanley denied that the Claimant had cauda equina syndrome, since her pain was mainly on the left side of her lower back.

### Procedural History

The Claimant filed a Petition to Determine Compensation Due seeking acknowledgement that her lower back injury was a compensable industrial injury on June 10, 2011. The Board issued its decision on the merits on February 3, 2012, which: 1) made its findings of fact; 2) granted the Claimant's petition; and 3) awarded her payment of medical bills, payment of total disability benefits from December 15, 2010 to February 1, 2011 at $364.33 per week, and attorney's fees in the amount of $8,000.

Rescare filed a Motion for Reargument on the award of medical bills, on the basis that Dr. Venkataramana cannot be compensated under title 19, section 2322D of the Delaware Code because he is an in-state provider who is not certified under the Health Care Payment system and did not obtain preauthorization for the treatments he provided. The Board agreed with Rescare, finding that the "emergency exception" to title 19, section 2322D of the Delaware Code did not apply, and that Dr. Venkataramana's services were not compensable. Nevertheless, the Board found that the Claimant's other medical expenses would be compensable pending the submission of "clean claims."

The Claimant and Rescare filed cross-appeals with the Delaware Superior Court. The Superior Court held that the Board erred when it found causation, i.e., that the Claimant's injury was a compensable industrial accident, because there was not sufficient evidence in the record to support such a finding. The Superior Court placed particular emphasis on the fact that, in its view, Dr. Venkataramana was not aware at the time that he rendered his expert opinion that the Claimant's injury occurred while lifting Isaac. As a result of that emphasis, the Superior Court held, "[t]he Board's decision is simply not rationally related to or based on Dr. Venkataramana's opinion." The Superior Court did not rule on the other grounds raised in the cross-appeals. We address those issues in the interest of justice and judicial economy.

### Standard of Review

On appeal from the Board, the Superior Court—and this Court—must determine, "whether the [Board] ruling is supported by substantial evidence and free from legal error." [1] Substantial evidence is that "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." [2] The Superior Court and this Court must view the record

---

1. *Diamond Fuel Oil v. O'Neal*, 734 A.2d 1060, 1062 (Del.1999) (quoting *Stoltz Management Co., Inc. v. Consumer Affairs Bd.*, 616 A.2d 1205, 1208 (Del.1992)).

2. *Steppi v. Conti Elec., Inc.*, 991 A.2d 19 (Del. 2010) (TABLE) (citing, *Scheers v. Indep. Newspapers*, 832 A.2d 1244, 1246 (Del.2003)).

in the light most favorable to the prevailing party below.[3]

 Both this Court and the Superior Court may only overturn a factual finding of the Board when there is no satisfactory proof in favor of such a determination.[4] However, "an award cannot stand on medical testimony alone, if the medical testimony shows nothing more than a mere possibility that the injury is related to the accident."[5] Nevertheless, such medical testimony can be supplemented by "other credible evidence tending to show that the injury occurred directly after the trauma and without interruption, ... such evidence would be sufficient to sustain an award."[6]

### Sufficient Evidence Precedents

In *General Motors Corp. v. Freeman*,[7] this Court held that a decision of the Board was based on sufficient evidence where medical testimony was supported by credible lay testimony.[8] In that case, a worker began to suffer pain immediately after being affected by a foreign body entering his eye while dealing with a fire.[9] Although he was later diagnosed with a detached retina, testifying experts could not say with a medical certainty that the condition was caused directly by the work incident, although they each testified that it was a possibility.[10] In that case, the Board found that the injured worker's credible testimony regarding the timeline of events supported the "weak" medical testimony and was sufficient to show causation.[11] Both the Superior Court and this Court affirmed that determination by the Board.[12]

In *Steppi v. Conti Elec., Inc.*,[13] this Court reversed a Superior Court judgment which overturned the Board's finding that the claimant had shown causation.[14] In that case, where the claimant's exposure to hydrogen sulfide gas at an oil refinery led to his disability, the Board found the testimony of two medical experts in support of claimant to be more persuasive than other evidence to the contrary, including testimony by a defense medical expert.[15] The Superior Court reversed, concluding that there was no evidence of a gas leak and no causal connection between the claimant's injury and the incident.[16] This Court held that "[t]he decision of the Board was supported by the minimum quantum of evidence required and should have been affirmed."[17] In *Steppi*, this Court emphasized that the Board is entrusted to find the facts in any given case, and its findings of fact "must be affirmed if supported by any evidence,

---

3. *Id.* (citing *General Motors Corp. v. Guy*, 1991 WL 190491, at *3 (Del.Super.Ct. Aug. 16, 1991)).

4. *Id.* (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66–67 (Del.1965)).

5. *General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del.1960).

6. *Id.*

7. *Id.* at 686.

8. *Id.* at 689.

9. *Id.* at 687.

10. *Id.*

11. *Id.* at 689.

12. *Id.*

13. *Steppi v. Conti Elec., Inc.*, 991 A.2d 19 (Del.2010) (TABLE).

14. *Id.*

15. *Id.*

16. *Id.*

17. *Id.*

even if the reviewing court thinks the evidence points the other way." [18]

Conversely, in *Perry v. Berkley*,[19] this Court held that there was no factual foundation for a medical expert's testimony where the medical expert's testimony was based on an inaccurate medical history.[20] In that case, the medical expert was never asked at a subsequent deposition to update his testimony based upon a corrected medical history.[21] This Court held that because the medical expert's testimony was based upon an incorrect medical history, it was inadmissible under of D.R.E. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).[22]

### Sufficient Evidence Presented

■ In this case, the Board found that the Claimant's injury was caused on December 15, 2010 when the Claimant lifted Isaac in the course of her work duties. The Board here, like the Board in *Freeman*, relied upon Claimant's testimony about the timing of her injury to supplement the medical evidence provided by Dr. Venkataramana when it determined causation. Furthermore, the Board here, much like the Board in *Steppi*, found Dr. Venkataramana's testimony, supported by the testimony provided by the lay witnesses, more persuasive and credible than Dr. Kevin Hanley's testimony that the Claimant's injury could not be traced to a work-related incident to a medical certainty.

In this case, the Superior Court relied heavily on the fact that at the time of his

diagnosis of the Claimant's injury, Dr. Venkataramana was unaware of the December 15, 2010 lifting incident. Unlike in *Perry*, however, it is clear from the transcript of Dr. Venkataramana's deposition that he knew of the Claimant's differing accounts of her injury's origin at the time of his deposition was taken. It was during his deposition that he rendered the expert medical opinion on which the Board relied. Furthermore, there is sufficient other evidence in the record to support the Board's finding. Specifically, Dr. Hanley agreed that if the Claimant's account of the events relating to her injury are true, that the event likely caused the injury.

The record reflects that the Board's findings of fact are sufficient to support its conclusion that the Claimant's injury was caused by a work-related accident. Therefore, the Superior Court's judgment to the contrary must be reversed.

### Statutory Review Standard

■ This Court reviews statutory interpretation undertaken by boards and trial courts *de novo*.[23] When so doing, this Court's goal is to, "determine and give effect to [the] legislative intent." [24] Undefined words are given their ordinary, common meaning, and words should not be construed as surplus if a reasonable construction will give them meaning.[25] When the statute is "clear on its face and is fairly susceptible to only one reading, the unambiguous text will be construed accordingly," unless the result is an absurdity "that

18. *Id.* (quoting 8 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 130.01[3] (2009)).

19. *Perry v. Berkley*, 996 A.2d 1262 (Del.2010).

20. *Id.* at 1270.

21. *Id.*

22. *Id.* at 1270–71.

23. *Progressive N. Ins. Co. v. Mohr*, 47 A.3d 492, 495 (Del.2012) (citations omitted).

24. *Id.* (quoting *Le Van v. Independence Mall, Inc.*, 940 A.2d 929, 932 (Del.2007)).

25. *Id.*

cannot be attributed to the legislature."[26] Where the text of a statute is ambiguous, however, this Court, "will resort to other sources [of the statute's apparent purpose], including relevant public policy."[27] In interpreting the statute, this Court will read all sections of the statute, "in light of all the others to produce a harmonious whole."[28]

### Emergency Exception Inapplicable

Title 19, section 2322B(8)(b) of the Delaware Code states:

Healthcare provider services provided *in an emergency department of a hospital,* or *any other facility subject to the Federal Emergency Medical Treatment and Active Labor Act,* 42 U.S.C. § 1395dd, and any emergency medical services *provided in a prehospital setting by ambulance attendants and/or paramedics,* shall be exempt from the healthcare payment system and shall not be subject to the requirement that a healthcare provider be certified pursuant to § 2322D of this title, requirements for preauthorization of services, or the healthcare practice guidelines adopted pursuant to § 2322C of this title.[29]

■ The Claimant argues that, " . . . it is clear that the 'emergency exception' provided by section 2322B(8)[(b)] applies in all situations where urgent care is needed," and cites numerous extrajurisdictional cases that support her point. Those cases are, however, at best persuasive authority, and, given the unambiguous nature of the

Delaware statutory language, inapplicable in this case.

We hold that the Board correctly concluded the emergency exception of title 19, section 2322B(8)(b) does not apply to the facts of the Claimant's case because the medical treatment she received from Dr. Venkataramana was not provided in the emergency room of a hospital or other similar facility, nor was it performed in a prehospital setting by ambulance attendants or paramedics. Therefore, the emergency exception under title 19, section 2322B(8)(b) does not apply to the facts of the instant case and cannot be grounds for the recovery of medical expenses related to the surgery performed by Dr. Venkataramana.

### Preauthorization Was Necessary

■ Title 19, section 2322D(a)(1) of the Delaware Code states:

*Certification shall be required for a health care provider to provide treatment to an employee, pursuant to this chapter, without the requirement that the health care provider first preauthorize each health care procedure, office visit or health care service to be provided to the employee with the employer or insurance carrier.*[30]

Read alone, such a provision would seem to limit reimbursement for medical expenses only to those cases in which either the provider was certified under the statute or the provider is uncertified *and* obtains a prior authorization. However, title 19, section 2322C(6) states:

---

**26.** *Id.* at 496 (citing *CML V, LLC v. Bax,* 28 A.3d 1037, 1040 (Del.2011)).

**27.** *Id.* (citing *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust, ex rel. Christiana Bank and Trust Co.,* 28 A.3d 1059, 1070 (Del.2011)).

**28.** *Id.* (quoting *CML V, LLC v. Bax,* 28 A.3d 1037, 1040 (Del.2011)).

**29.** Del.Code Ann. tit. 19, § 2322B (emphasis added).

**30.** Del.Code Ann. tit. 19, § 2322D(a)(1) (emphasis added).

Services rendered by any health care *provider certified* to provide treatment services for employees *shall be presumed,* in the absence of contrary evidence, *to be reasonable and necessary* if such services conform to the most current version of the Delaware health care practice guidelines. *Services provided by health care providers that are not certified shall not be presumed reasonable and necessary unless such services are preauthorized* by the employer or insurance carrier, subject to the exception set forth in § 2322D(b) of this title.[31]

Furthermore, title 19, section 2322B(1) of the Delaware Code states:

*The intent of the General Assembly in authorizing a health care payment system* is not to establish a "push down" system, but is instead to establish a system that eliminates outlier charges and streamlines payments by *creating a presumption of acceptability of charges implemented through a transparent process,* involving relevant interested parties, that prospectively responds to the cost of maintaining a health care practice ... [32]

In *Vanvliet v. D & B Transp.,*[33] the Superior Court engaged in an analysis of the foregoing statutory provisions in a case concerning whether health care provided by a non-certified practitioner who failed to obtain preauthorization for the care provided was unrecoverable.[34] In that case the court found that the statute was am-biguous with regard to the compensability of such claims and interpreted the statute to allow for the compensation of such claims where medical expenses are "reasonable and necessary," to treat a work-related injury.[35]

In *Vanvliet,* the Superior Court relied upon the fact that nowhere in the statute does the legislature expressly exempt employers from paying medical bills where the provider is uncertified and failed to obtain preauthorization.[36] Furthermore, the court found that the presence of the word "presumed" is key to the proper interpretation of the statute.[37] The court reasoned that a statutory interpretation that prohibits compensation where a provider is not certified and does not obtain preauthorization would fail to give effect to the term "presumed" in title 19, section 2322C(6), and that it would fail to effect the express intent of the General Assembly to create a legal presumption in favor of certified or preauthorized providers as announced in title 19, section 2322B(1).[38] As a result, where the medical provider is not certified and does not obtain preauthorization, the court in *Vanvliet* held the presumption in favor of the treatment being "reasonable and necessary" falls away, and the Claimant must show the reasonableness and necessity of the course of action taken for the treatment of the Claimant's work-related injuries.[39]

The interpretation by the Superior Court in *Vanvliet* does not address the entire statutory framework. The statutes

---

**31.** Del.Code Ann. tit. 19, § 2322C(6) (emphasis added).

**32.** Del.Code Ann. tit. 19, § 2322B(1) (emphasis added).

**33.** *Vanvliet v. D & B Transp.,* 2012 WL 5964392 (Del.Super.Ct. Nov. 28, 2012).

**34.** *Id.* at *3.

**35.** *Id.* at *4.

**36.** *Id.*

**37.** *Id.*

**38.** *Id.*

**39.** *Id.*

relied upon by the court in *Vanvliet* must be read *in pari materia* with title 19, section 2322D(b), which provides:

> Notwithstanding the provisions of this section, *any health care provider may provide services during 1 office visit ... without first having obtained prior authorization,* and receive reimbursement for *reasonable and necessary services directly related to the employee's injury* .... The provisions of this subsection are *limited to the occasion of the employee's first contact* with any health care provider for treatment of the injury, and *further limited* to instances *when the health care provider believes in good faith, after inquiry, that the injury or occupational disease was suffered in the course of the employee's employment.*[40]

An interpretation of the statute which makes section 2322D(b) a nullity does not read all sections of the statute, "in light of all the others to produce a harmonious whole."[41] Section 2322D(b) specifically allows compensation for the *first visit* to an uncertified, non-preauthorized provider, but only where services are *reasonable and necessary* and where the provider believes, in good faith, that the injury was work-related. Such an exception would be superfluous if the statute were intended to function as the court in *Vanvliet* determined. Under that court's analysis, any uncertified, non-preauthorized provider could be compensated for *all* expenses that the Claimant shows, by a preponderance of the evidence, to have been "reasonable and necessary" to the treatment of a work-related injury. Situations like those covered in section 2322D(b) would be subsumed by that analysis, and an exception

for the first office visit would be unnecessary, rendering the provision meaningless.

■■■■ We hold that the statutory framework is unambiguous when all of the provisions are read *in pari materia.* The statute requires that providers be either certified or preauthorized and that the treatments provided are reasonable and necessary to treat a work-related injury. When the provider is either certified or preauthorized, the claimant is entitled to the *presumption* that treatments provided were both "reasonable and necessary." This presumption is rebuttable, however, meaning that an employer could attempt to rebut it by showing evidence to the contrary.

■■■■ Where, however, the provider is neither certified nor preauthorized, compensation for medical treatment is generally not available, with narrow exceptions for care provided on the first visit to the provider[42] and for care provided in the emergency unit of a hospital or in a pre-hospital setting.[43] Accordingly, the Board properly concluded that title 19, section 2322D(a)(1) exempted the employer from having to pay for medical treatment provided by Dr. Venkataramana, apart from the care provided during the Claimant's first visit with him.

### Conclusion

The judgment of the Superior Court is reversed. The judgment of the Board is affirmed in part and reversed in part as to the compensability of the Claimant's "other medical expenses." Only the expenses related to the Claimant's first visit to Dr. Venkataramana are compensable pursuant

**40.** Del.Code Ann. tit. 19, § 2322D(b) (emphasis added).

**41.** *Progressive N. Ins. Co. v. Mohr,* 47 A.3d 492, 495 (Del.2012) (citations omitted).

**42.** Del.Code Ann. tit. 19, § 2322B.

**43.** Del.Code Ann. tit. 19, § 2322D(b).

to section 2322D(b) and the other sections in the entire statutory scheme. This matter is remanded for further proceeding in accordance with this opinion.

See also, 2010 WL 8250792.