# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

JOSEPH WILSON,                          :
                                        :
        Appellant,                      :
                Claimant-Below,         :         K21A-06-002 JJC
                                        :
        v.                              :
                                        :
GINGERICH CONCRETE &                    :
MASONRY,                                :
                                        :
        Appellee,                       :
                Employer-Below.         :
                                        :

Submitted: December 15, 2021
Decided: March 9, 2022

## MEMORANDUM OPINION & ORDER

Walt F. Schmittinger, Esquire, and Gary E. Junge, Esquire, Schmittinger & Rodriguez, P.A. Dover, Delaware, *Attorneys for the Employee-Below/Appellant*

H. Garrett Baker, Esquire, Elzufon, Austin & Mondell, P.A. Wilmington, Delaware, *Attorney for the Employer-Below/Appellee*

**Clark, R. J.**

Appellant Joseph Wilson ("Mr. Wilson") appeals a decision of the Industrial Accident Board (hereinafter the "IAB" or "the Board"). In his appeal, he challenges the IAB's denial of his petition seeking payment for a cervical spine surgery. He contends that the Board erred when it found that Dr. Bikash Bose's treatment was not compensable because Dr. Bose's certification as a workers' compensation health care provider had lapsed.

The Appellee, Gingerich Concrete and Masonry ("Gingerich") counters that the IAB correctly denied the petition. Gingerich contends that the Board properly applied 19 *Del. C.* § 2322D (hereinafter "Section 2322D") and the Workers' Compensation Regulations that the Department of Labor promulgated pursuant to Section 2322D (the "Regulations"). Gingerich further contends that the Board's decision is consistent with the Delaware Supreme Court's decision in *Wyatt v. Rescare Home Care.*[1]

For the reasons discussed below, Dr. Bose's billing for this surgery is not compensable. Because Dr. Bose's certification had lapsed at the time he performed the surgery and because Dr. Bose did not obtain pre-authorization for the treatment, Gingerich is under no statutory obligation to pay for it. As a result, the Court affirms the IAB's decision denying compensation and attorneys' fees.

## I. FACTS OF RECORD

On August 1, 2002, Mr. Wilson injured his neck and lower back while working for Gingerich. Later, in 2014, Mr. Wilson started treating with Dr. Bose, a neurosurgeon. The doctor first performed a lower back surgery on Mr. Wilson, and

---

[1] 81 A.3d 1253 (Del. 2013).

Gingerich's insurance carrier paid the bills.[2]   At the time Dr. Bose performed that first surgery, he held a workers' compensation healthcare provider certification as contemplated by Section 2322D.[3]

On July 2, 2019, Dr. Bose then performed the first of two related cervical surgeries on Mr. Wilson.[4]   When Dr. Bose performed the first of those two surgeries, he maintained his Section 2322D certification.[5]   Gingerich's carrier paid those bills also.[6]   Unfortunately, his first cervical surgery proved unsuccessful because the area did not fuse properly.[7]   Dr. Bose then recommended a second surgery to correct the issue.[8]

After receiving Dr. Bose's recommendation, Mr. Wilson filed an October 2020 petition with the IAB to seek payment for the additional surgery.[9]   Between the time Mr. Wilson filed his petition and the IAB hearing, Dr. Bose performed the surgery on February 22, 2021.   By that point, the IAB had scheduled Mr. Wilson's hearing for April 23, 2021.

After the surgery and immediately prior to the April 2021 IAB hearing, Mr. Wilson deposed Dr. Bose so he could present his expert testimony at the hearing.[10]   Dr. Bose testified, to a reasonable degree of medical probability, that the February 2021 surgery was reasonable, necessary, and related to Mr. Wilson's work injury.[11]

---

[2] *Wilson v. Gingerich Concrete & Masonry*, No. 1215102, Ex. 3, at 8:18-25 (Del. I.A.B. Apr. 23, 2021).   Dr. Bose first became certified pursuant to Delaware's workers' compensation healthcare practice guidelines in April 2008.

[3] *Id.   See* 19 *Del. C.* § 2322D(a)(1) (providing that "[c]ertification shall be required for a health-care provider to provide treatment to an employee . . . .").

[4] *Wilson*, No. 1215102, Ex. 4, at 11:21-22.

[5] *Id.* Ex. 3, at 9:1-2.

[6] *Id.* at 8:19-20.

[7] *Id.* Ex. 4, at 22:21-24; 23:1.

[8] *Id.* at 18-19.

[9] *Id.* Ex. 1.

[10] *Id.* Ex. 4.

[11] *Id.* Ex. 4, at 25:20-24; 26:1-2.

During his testimony, however, Dr. Bose acknowledged that his workers' compensation certification had lapsed on August 31, 2019. He also testified that he did not renew his certification before Mr. Wilson's second cervical surgery in February 2021.[12] At the deposition, Gingerich's counsel asked Dr. Bose whether he was certified at the time he performed the surgery.[13] Dr. Bose responded that due to the Covid-19 pandemic, the paperwork necessary to maintain his certification "fell through the cracks."[14] Nevertheless, Dr. Bose testified that he considered himself to have remained certified.[15] He testified that he corrected the issue during the last week of March 2021 and that by the day of his deposition, he was again current with all requirements.[16]

After Dr. Bose's deposition, Gingerich filed a motion *in limine* and presented it at the IAB hearing.[17] In the motion, Gingerich asserted that the lapse obviated Mr. Wilsons' right to recover his surgical bills through the workers' compensation health care payment system. Pursuant to a pre-hearing stipulation, the parties agreed that the disputed surgery was reasonable, necessary, and related to Mr. Wilson's workplace injury.[18] They further stipulated that Dr. Bose first become certified on April 30, 2008, and then recertified four additional times, through August 11, 2017.[19] According to the stipulation, his certification then "lapsed" from August 31, 2019 to March 29, 2021.[20] Given these stipulations, the hearing centered on a single legal issue: that is, the compensability of reasonable, necessary, work-related treatment

---

[12] *Id.* at 28:10-11.
[13] *Id.* at 28:1-2.
[14] *Id.* at 28:20-23.
[15] *Id.*
[16] *Id.* at 28:10-17.
[17] *Wilson*, No. 1215102, Ex. 2, at 1-2.
[18] *Id.* Ex. 5, ¶ 6.
[19] *Id.* ¶ 4.
[20] *Id.*

4

performed by a physician whose certification had lapsed and who further failed to seek pre-authorization for the treatment.

After considering the evidence, the stipulated facts, and the text of Section 2322D, the IAB found the surgery to be non-compensable.[21] In its decision, the Board recognized and accepted that Dr. Bose's lapsed certification resulted from an administrative error and the Covid-19 pandemic.[22] Nevertheless, the Board found a lapse of more than eighteen months to be one that the Board could not excuse because of the plain language of Section 2322D.[23] Namely, because Dr. Bose's (1) certification had lapsed when he performed surgery on Mr. Wilson, and (2) Dr. Bose did not separately seek pre-authorization for the surgery, the IAB denied Mr. Wilson's petition and request for attorneys' fees.[24] Mr. Wilson then timely appealed the IAB's decision to the Superior Court.

## II. THE PARTIES' CONTENTIONS

In Mr. Wilson's appeal, he contends that the Board committed legal error when it equated a *lapse* in certification to a *lack* of certification. In this regard, Mr. Wilson contends that neither Section 2322D nor the Regulations[25] permit the IAB to find that a medical provider's certification expires every two years, unless the provider keeps it current. In essence, he argues that once Dr. Bose received his certification, he remained certified, notwithstanding the lapse.

---

[21] *Id.* Ex. 6, at 5.

[22] *Id.* at 4. When doing so, the Board also recognized that although Dr. Bose attributed fault for the lapse to the pandemic, the pandemic did not begin until March 2020 – approximately seven months after Dr. Bose permitted his certification to lapse. Notably, there is no evidence of record as to whose "administrative error" caused the lapse.

[23] *Id.*

[24] *Id.* at 6.

[25] *See* 19 *Del. Admin. Code* § 1341 (containing the Workers' Compensation Regulations, including those authorized by Section 2322D).

In his argument, Mr. Wilson acknowledges that the Regulations, promulgated by the Department of Labor ("DOL" or the "Department"), impose a more detailed obligation upon providers to keep their certifications current than does Section 2322D alone. That increased obligation, he contends, exceeded DOL's authority to regulate. In the alternative, Mr. Wilson contends that even the Regulations do not specify that a lapsed certification is synonymous with *no* certification.

In addition to his statutory and regulatory construction arguments, Mr. Wilson raises an additional challenge to the Board's decision – he contends that DOL did not provide Dr. Bose with proper notice or a hearing before it removed him from the list of certified providers. Namely, he alleges that the Department failed to provide Dr Bose with the notice and hearing required by Delaware's Administrative Procedures Act ("APA").[26]

Finally, Mr. Wilson cites two administrative decisions that the IAB issued before it decided Mr. Wilson's case.[27] Both decisions excused a doctor's lapse in certification under circumstances that are indistinguishable from Mr. Wilson's.[28] In those two decisions, the IAB applied what can only be described as a *de minimis* exception to the certification requirement.[29] In fact, one of those two decisions excused an eighteen-month lapse.[30] Because the Board did not address those two decisions in his case, Mr. Wilson contends that it acted arbitrarily, capriciously, and abused its discretion.

In response, Gingerich counters that Mr. Wilson has no standing to challenge process-related issues regarding Dr. Bose's certification. Gingerich further contends

---

[26] *See* 29 *Del. C.* §§ 10101-10161.
[27] *See* Appellant's Op. Br. Ex. 1-2; *Williams v. State*, No. 128220 (Del. I.A.B. Feb. 6, 2012) (concluding an administrative error did not preclude payment of medical bills) [hereinafter "*Williams*"]; *Zayes v. State*, No. 1365817 (Del. I.A.B. Sept. 10, 2015) (same) [hereinafter "*Zayes*"].
[28] *Williams*, at 2; *Zayes*, at 15.
[29] *Williams*, at 2; *Zayes*, at 15.
[30] *Williams*, at 2.

that the Board committed no legal error because it correctly applied Section 2322D's requirements and followed Delaware Supreme Court mandatory authority. Namely, Gingerich argues that to accept Mr. Wilson's argument that lapsed certification is different than **de**certification would require an unreasonable reading of the statute. Gingerich also emphasizes the broad holding in the Delaware Supreme Court's *Wyatt* decision that requires a provider to be certified to receive payment. Finally, it contends that even if the Court found Mr. Wilson to have standing to challenge Dr. Bose's alleged lack of notice, the APA provision he relies upon does not apply to DOL. Gingerich stresses that DOL is the agency responsible for administering Dr. Bose's certification.

## III.   STANDARD OF REVIEW

This Court's appellate review of an IAB decision requires it to determine whether the Board's decision was supported by substantial evidence and whether it committed an error of law.[31] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] On appeal, the Court must view the facts in the light most favorable to the prevailing party below.[33] When doing so, the Court does not weigh the evidence, determine credibility, or make its own factual findings.[34] Absent any errors of law, which are reviewed *de novo*, the Court must uphold a decision of the IAB if it is supported by substantial evidence and if the Board did not abuse its discretion.[35]   Finally,

---

[31] *Bullock v. K-Mart Corp.*, 1995 WL 339025, at *2 (Del. Super. May 5, 1995) (citing *General Motors v. Freeman*, 164 A.2d 686, 689 (Del. 1960)).

[32] *Powell v. OTAC, Inc.*, 223 A.3d 1253, 1259 (Del. 2019) (citing *Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981)).

[33] *Id.* (citing *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009)).

[34] *Bullock,* 1995 WL 339025, at *2 (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965)).

[35] *Hoffecker v. Lexus of Wilmington*, 2012 WL 341714, at *1 (Del. Feb. 1, 2012).

questions of statutory interpretation raise questions of law, which are subject to *de novo* review by the Court.[36]

## IV.   ANALYSIS

Mr. Wilson has statutory standing to appeal the IAB's decision.  Because Mr. Wilson did not develop a record on the issue of notice to Dr. Bose, however, the Court need not decide whether he has the expanded standing necessary to challenge the lawfulness of DOL's alleged deprivation of Dr. Bose's rights.  Furthermore, as to the merits, Section 2322D, read *in pari materia* with other relevant sections in Delaware's Workers Compensation Act (the Act"), required Dr. Bose to have been certified or to have obtained pre-authorization for the surgery.   Because Dr. Bose's certification had lapsed, Mr. Wilson's surgical bills are not compensable.

**A. Mr. Wilson has standing to challenge the Board's decision and findings; the Court need not, however, determine if he also has standing to challenge the sufficiency of DOL's notice to Dr. Bose or whether DOL improperly failed to provide Dr. Bose a hearing.**

As a threshold issue, Gingerich challenges Mr. Wilson's standing to raise a certain issue on appeal.  At the outset, Gingerich concedes Mr. Wilson's right to appeal the IAB's adverse decision.   Nevertheless, it disputes whether Mr. Wilson has standing to challenge DOL's alleged failure to provide Dr. Bose notice that his certification had lapsed.   Although the parties did not frame the issue in terms of estoppel, what Mr. Wilson argues is essentially that Gingerich should be estopped from refusing to pay the bills because Dr. Bose received no notice that his certification had lapsed.   In this regard, Mr. Wilson contends that DOL violated *Dr.*

---

[36] *Del. Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 652 (Del. 2006).

8

*Bose's* due process rights and *Dr. Bose's* separate statutory right to notice provided by 29 *Del. C*. §10131.

At the outset, Mr. Wilson possesses statutory standing to file this appeal. Where a controlling statute provides a party the right to contest a matter before an administrative agency and a conditional right to appeal that agency's decision, the party has standing.[37]    Here, at each link in the chain of workers' compensation litigation, the Act provided Mr. Wilson rights, that if deprived, gave him standing before the IAB and the Court.   Namely, Mr. Wilson had the right to claim medical expenses from his employer, Gingerich.[38]   Because there was a dispute regarding compensability, the Act provided him the statutory right to seek redress from the IAB for non-payment.[39]   After he filed his petition, the Act provided that "the Board shall hear and determine" whether the employer is responsible for paying the employee's medical expenses.[40]   Given the Board's adverse decision, Mr. Wilson had the statutory right to appeal the decision to the Superior Court.[41]   The APA separately provided him, as the losing party, the right to appeal the decision to the Superior Court.[42]   As a result, Gingerich's refusal to pay compensation under the Act provides Mr. Wilson standing to appeal the IAB's adverse decision to Superior Court.

In this case, the parties dispute over "standing" is more nuanced, however. Namely, Gingerich raises what is a thorny standing issue:  that is, whether a claimant who files an administrative appeal may challenge the deprivation of a *third-party's*

---

[37] *See Off. of the Comm'r v. Appeals Comm'n*, *Del. Alcoholic Beverage Control*, 116 A.3d 1221, 1226 (Del. 2015) (explaining that a party does not have a right to appeal unless the governing statute has conferred a right to do so).

[38] 19 *Del. C.* § 2322(a).

[39] *Id.* § 2322(c).

[40] *Id.* § 2346.

[41] *Id.* § 2350.

[42] 29 *Del. C.* § 10142.  Notably, the Chapter in the APA that addresses case decisions applies to the IAB, but not the Department of Labor. *See id.* § 10161(a)(8) (providing that the entire APA, including Subchapter III. Case Decisions, applies to the IAB).

rights because the alleged deprivation of that third-party's rights also harms the claimant. Here, the Court need not decide the matter for three independent reasons. Two of the reasons stem from the APA's provisions that Mr. Wilson relies upon. The third follows from Mr. Wilson's failure to develop a record below.

At the outset, Mr. Wilson did not raise the issue of procedural due process before the Board and cannot do so now.[43] Rather, he challenged whether the DOL met the APA's notice requirements.[44] Regarding the APA, Gingerich correctly recognizes that DOL does not fall within the subchapter of the APA containing the purported rights that Mr. Wilson relies upon.[45] As a result, neither Dr. Bose nor Mr. Wilson had a statutory right, under the APA, to receive notice or a hearing from DOL.

Second, the APA's section that addresses necessary steps for an agency to revoke a license does not apply to Dr. Bose's certification on its face. Namely, the relevant section that requires notice and a hearing exempts a "license required solely for revenue purposes" from those requirements.[46] Dr. Bose's workers' compensation certification is a credential provided solely for revenue purposes. Accordingly, it would not trigger the APA's notice requirement even if that APA provision applied to the Department.

For a third, and even more basic reason, Mr. Wilson may not raise this issue on appeal. Namely, to raise an issue on appeal, he must have not only fairly raised it below, but must have created a factual record sufficient to present the issue on

---

[43] *Watkins v. Beatrice Companies, Inc.*, 560 A.2d 1016, 1020 (Del. 1989); *see 395 Associates, LLC v. New Castle County*, 2006 WL 2021623 (Del. Super. July 19, 2006) (recognizing that an issue must be fairly presented before an administrative body to be preserved for appeal).

[44] *Wilson*, No. 1215102, Ex. 3, at 27:1-10.

[45] *See* 29 *Del. C.* § 10161 (listing the State agencies that are subject to the entire APA, including Subchapter IV. Licenses, but excluding DOL).

[46] *See id.* § 10102(5) (defining license as "the whole or part of any agency permit, certificate, approval, registration, charter or similar form of permission required by law," but exempting "a license required solely for revenue purposes").

appeal.[47]  At the IAB hearing, Mr. Wilson presented no evidence that supported that Dr. Bose failed to receive notice.  Nor did he address whether DOL had offered Dr. Bose a hearing or refused to provide him a hearing.   The extent of record evidence regarding why Dr. Bose's certification lapsed, was the doctor's testimony on cross-examination that "the CME [paperwork] was not filed . . . [because] with Covid there was some problem with communication from their office email . . . and it fell through the cracks . . . ."[48]   Furthermore, the parties stipulated that Dr. Bose's certification "lapsed" between August 31, 2019 and March 29, 2021.[49]   Given this limited evidence, the record is devoid of any evidence, much less substantial evidence, that could support that DOL violated Dr. Bose's rights.  Mr. Wilson simply did not create a factual record sufficient for the Court to consider the issue on appeal.

### B. The Board correctly applied Section 2322D and the *Wyatt* decision; the disputed bills are not compensable as a matter of law.

The sole substantive issue in Mr. Wilson's appeal is legal, not factual.   In this case, neither Dr. Bose nor Mr. Wilson sought preauthorization for the cervical surgery.  As a result, the dispute centers on whether Dr. Bose's lapsed certification prevents Mr. Wilson from recovering medical bills that Gingerich stipulated to being reasonable, necessary, and related to Mr. Wilson's work injury.

The Court's analysis first focuses on the parties' stipulation that Dr. Bose's certification had "lapsed."[50]  The common, ordinary meaning of "lapse" includes where a right, privilege, or agreement *becomes invalid* because it is not used, claimed

---

[47] *Burton v. State*, 89 A.3d 476, 2014 WL 1171785, at *3 (Del. Mar. 21, 2014); *Holben v. Pepsi Bottling Venture, LLC*, 2020 WL 571367, at *4 (Del. Super. Feb. 5, 2020).

[48] *Wilson*, No. 1215102, Ex. 4, at 28:6, 23.

[49] *Id.* Ex. 5 ¶ 4.

[50] *See id.* ("Dr. Bose's certification thereafter lapsed as of 8/31/2019 . . . [Dr. Bose] was recertified on 3/29/2021").

or renewed.[51]  In other words,  the right or privilege expired.[52]  In the face of such a stipulation, Mr. Wilson argues that neither Section 2322D nor the Regulations permitted the IAB to find that Dr. Bose was not certified at the time of the surgery. In other words, Mr. Wilson contends that once Dr. Bose became certified, he remained certified, notwithstanding the "lapse."

Gingerich counters that Section 2322D provides that "[c]ertification *shall be required* for a health-care provider to provide treatment to an employee . . . without the requirement that the health-care provider first preauthorized each health-care procedure."[53]  Gingerich also relies on the Delaware Supreme Court's decision in *Wyatt*, where the Court held that Section 2322D, when read together with the balance of the Act, prevents an uncertified provider from recovering payment for bills that were not preauthorized.[54]  As to the *Wyatt* decision, Gingerich stresses the Supreme Court's strict interpretation of the Act's limited and itemized exceptions to the certification or preauthorization requirement.[55]  There is no dispute that Mr. Wilson's circumstances do not fall within any of those exceptions.

Here, Gingerich is correct that the Delaware Supreme Court's decision in *Wyatt* controls the Court's *de novo* review.  In *Wyatt*, the Supreme Court considered whether an uncertified doctor's surgery performed without preauthorization was compensable.[56]  That case examined the payment of bills for a spinal surgery performed by an uncertified neurosurgeon.[57]  The claimant filed a petition with the

---

[51] Am. Heritage Dictionary 714 (2d ed. 1985).
[52] *Id.*
[53] 19 *Del. C.* § 2322D(a)(1) (emphasis added).
[54] *Wyatt*, 81 A.3d at 1263.
[55] *Id. See* 19 *Del. C.* § 2322D(b) (providing for compensation for the first visit to an uncertified, non-preauthorized provider, but only where services are reasonable, necessary, and the provider believes that the injury is work-related).
[56] *Wyatt*, 81 A.3d at 1257.
[57] *Id.*

12

IAB and first sought to prove her injury related to her work.[58] When the Board granted the claimant's petition, it found the injury compensable. It then awarded the claimant her medical expenses with one significant exception: it did not award her the bills for the treatment performed by the uncertified neurosurgeon.[59]

In its decision, the Supreme Court examined the Act's framework as a whole and recognized that the claimant's circumstances fell within none of the statutory exceptions.[60] When doing so, the Court wrote:

> [w]e hold that the statutory framework is unambiguous when all of the provisions are read *in pari materia*. The statute requires that providers be either certified or preauthorized . . . Where . . . the provider is neither certified nor preauthorized, compensation for medical treatment is generally not available, with *narrow* exceptions for care provided on the first visit to the provider, and for care provided in the emergency unit of a hospital or in a pre-hospital setting. Accordingly, [Section 2322D] exempted the employer from having to pay for medical treatment provided by [the uncertified neurosurgeon].[61]

Despite the *Wyatt* decision's broad holding, Mr. Wilson seeks to distinguish it. He correctly observes that the surgeon in *Wyatt*, unlike Dr. Bose, was *never* certified.[62] Dr. Bose, in contrast, certified four separate times, his certification lapsed, and then he again became compliant after he performed Mr. Wilson's surgery.

Although Mr. Wilson's argument is well-taken, the Supreme Court's holding in *Wyatt* controls. First, in the *Wyatt* decision, the Supreme Court rejected the claimant's argument that the sole penalty for a failure to certify or obtain preauthorization is the mere loss of a *presumption* that the care was reasonable and

---

[58] *Id.* at 1258.
[59] *Id.*
[60] *Id.* at 1263.
[61] *Id.* (emphasis added).
[62] *Id.* (emphasis added).

necessary.[63]   The Supreme Court performed a detailed statutory analysis of the Act, as a whole, and explained why reading the certification-for-payment requirement out of the statute would render such a requirement a nullity.[64]   The Supreme Court held that for a bill to be payable under the health care payment system, Section 2322D requires  (1) the treating physician to be certified or (2) that he or she obtain preauthorization for the treatment.[65]  Given what is an exclusive list of exceptions, Section 2322D permits no additional *good faith* exception.[66]

An independent examination of Section 2322D provides the same result. Namely, that section provides six initial requirements that a health care provider must meet for initial certification.[67]   In addition to those six requirements, Section 2322D also requires a provider to agree to eight *ongoing* terms and conditions to remain certified.[68]   One of the ongoing conditions includes the requirement that the provider

---

[63] *See id.* at 1262 (discussing section 2322C(6)'s provision that "[s]ervices rendered by any health-care provider certified to provide treatment services for employees shall be presumed . . . to be reasonable and necessary" if performed in accordance with the Delaware Health-Care Practice Guidelines).

[64] *Id.* at 1263. *See Vanliet v. D & B Transportation*, 105 A.3d 390, 391 (Del. 2014) (declining to reconsider *Wyatt*, applying its holding broadly, and declining to expand the limited statutory exceptions).

[65] *Wyatt*, 81 A.3d at 1263.

[66] *Id.* (emphasis added).

[67] To be certified pursuant to the statute, a healthcare provider must:
> (1)have a current license to practice; (2) meet general certification requirements for the specific provider type; (3) possess a current and valid DEA registration, unless not required by the discipline and scope of their practice; (4) have no previous involuntary termination from participation in Medicare, Medicaid, or the Delaware workers' compensation system; (5) have no felony convictions . . .; and (6)  provide proof of adequate, current medical professional malpractice and liability insurance.
> 19 *Del. C.* § 2322D(a)(1)(a)-(f).

[68] The certification rules require that any healthcare provider who wishes to be certified must also meet the following ongoing terms and conditions:
> (1)compliance with Delaware workers' compensation laws and rules; (2) maintenance of acceptable malpractice coverage; (3) completion of State-approved continuing education courses in workers' compensation care every 2 years; (4) practice in a best-practices environment, complying with practice

14

complete "State-approved continuing education courses in workers' compensation care every two years."[69]

While the record below does not identify what caused the stipulated "lapse," both parties conceded in their briefing that Dr. Bose failed to provide proof that he met this continuing education requirement.[70] Even if the statute were ambiguous, which it is not, Section 2322D must be interpreted reasonably and in a way that does not produce absurd results.[71] There is no reasonable reading of Section 2322D that permits the Court to conclude that once a provider is certified, the provider remains certified for all of time. The inclusion in Section 2322D of a list of ongoing obligations for certification demonstrates that providers must keep their certifications current. If they do not, they are not certified.

In addition, Section 2322D requires DOL to promulgate regulations "relating to provider certification."[72] Specifically, it requires the Department to adopt rules that address ongoing obligations necessary for certification.[73] An agency, such as

---

guidelines and the utilization review determinations; (5) agreement to bill only for services and items performed or provided, and medically necessary, cost-effective related to the claim or condition; (6) agreement to inform an employee of that employee's liability for payment of noncovered services prior to delivery; (7) acceptance of reimbursement and not unbundled charges into separate procedure codes when a single procedure is more appropriate; and (8) agreement not to balance bill any employee or employer and employees shall not be required to contribute a copayment or meet any deductibles.
*See id.* (2)(a)-(h) (emphasis added).

[69] *Id* § 2322D(a)(2)(c).

[70] Wilson Op. Br. at 11; Gingerich Ans. Br. at 7. Given the parties agreement on this issue, the Court assumes that the continuing education requirement is the ongoing condition at issue.

[71] *Del. Bay Surgical Servs.*, 900 A.2d at 652 (citing *Coastal Barge Corp. v. Coastal Zone Ind. Control Bd.*, 492 A.2d 1242, 1246 (Del. 1985)).

[72] *Id.* § 2322D(a)(2)(c).

[73] *Id.* (c) (providing that "rules and regulations relating to provider certification . . . *shall* be adopted by regulation of the Department of Labor").

DOL, may exercise rulemaking authority but must do so within the parameters of its enabling statute.[74]

Mr. Wilson contends that the Regulations are unlawful because they contradict Section 2322D.  To the contrary, they fall in lockstep with it.   At the outset, the Regulations merely restate much of Section 2322D.  As to continuing education, they require the provider, *inter alia*, to do the following:

> *[t]o maintain certification*, the health care provider must provide written notification . . . of compliance with the continuing education course requirement noted above, setting forth the name of the course(s) completed and the date of completion in accordance with the above.[75]

Because Section 2322D required DOL to promulgate rules that require a certified provider to complete "State-approved continuing education courses in workers' compensation care every 2 years," the above-quoted regulation falls comfortably within the authority that the General Assembly provided DOL.[76]

Finally, Mr. Wilson contends that the IAB's failure to follow its own precedent requires reversal.   He correctly observes that the IAB had issued two prior decisions granting claimants' petitions for medical payments under circumstances that are indistinguishable from Mr. Wilson's.   In both decisions, the Board excused lapses in certification and awarded the claimant compensation for bills for their services.[77] When doing so, the Board applied what was essentially an administrative error/*de*

---

[74] 73 C.J.S. Pub. Admin. L. Proc. § 209 (2022).
[75] 19 *Del. Admin. Code* § 1341-3.1.5.3 (emphasis added).
[76] 19 *Del. C.* § 2322D(c).
[77] *See Williams*, at 2 (finding that a claimant's petition should not be denied because of a "mere" procedural technicality, where doctor's failure to file continuing education certification was considered *de minimus,* given an eighteen-month lapse in certification); *Zayes*, at 15 (applying the *de minimus* error rule as announced in *Williams* and finding that a simple lapse of certification due to an administrative error should not disqualify provider's bills from payment where the doctor did not get a reminder to update his certification).

16

*minimis* exception to Section 2322D's certification requirement.[78]   It found that a lapse in certification did not automatically render the bills non-compensable.[79] One of those decisions preceded the *Wyatt* decision.[80]  One of them followed it.[81]

Mr. Wilson correctly recognizes that, while an agency is not bound forever by its prior decisions, it must explain why it adopts a new standard or sets new policies that differ from existing standards or policies.[82]   An agency has an obligation to explain why it deviates from its own precedent if the precedent set a different standard.   This requirement flows from the obligation to avoid arbitrariness and promote fairness and consistency.[83]

In this case, the IAB did not explain why it departed from its two prior decisions.  As a result, the Court considered whether it would be appropriate to remand the matter for an explanation as to why it changed its approach.  In this case, however, it would be an inefficient use of the Court's, the Board's, and the parties' resources to remand the case for that purpose.  Here, the Court's decision turns solely on an issue of statutory and regulatory construction that is subject to *de novo* review by the Court.[84]   Because the IAB's decision as to Mr. Wilson was correct as a matter of law, the Board's explanation as to why it changed its position would not change the result.  It would merely add an additional step to the process that could not change the outcome.

---

[78] *Williams*, at 2; *Zayes*, at 15.
[79] *Williams*, at 2; *Zayes*, at 15.
[80] *Williams*, at 3.
[81] *Zayes*, at 18.
[82] *Chesapeake Utilities Corp. v. Delaware Public Services Comm'n*, 705 A.2d 1059, 1074 (Del. 1997).
[83] *See* Charles H. Koch, Jr. & Richard Murphy, *Impact of Administrative Decisions*, 2 Admin. L. & Prac. § 5:67 (3d ed. 2022) (explaining that "consistency is a fundamental force in administrative law").
[84] *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 899 (Del. 1994).

On balance, the Court recognizes that applying Section 2322D's certification requirements to this case may cause Mr. Wilson hardship. There is no indication he did anything wrong. He merely seeks to recover undisputedly reasonable and necessary medical expenses incurred because of his work injury. When he underwent the surgery, there is no doubt that he reasonably assumed that that Dr. Bose remained certified.

Dr. Bose may also face considerable hardship in this situation. He performed a reasonable and necessary surgery, though his certification had lapsed. That lapse may cause him a contractual impediment because of resulting delay in submitting the bills to a health insurer. As to his ability to recover the bills from Mr. Wilson directly, it may also cause him a significant contractual impediment given the course of dealing between he as a provider and Mr. Wilson as his patient.

Notwithstanding these potential hardships, neither the IAB nor the Court may substitute their judgment for that of the General Assembly. In Delaware's workers' compensation system, the General Assembly provided for only very limited exceptions to the certification requirement. Here, the IAB decided this case based upon substantial evidence given the stipulated record below. It likewise committed no legal error.

## V.  CONCLUSION

For the reasons discussed, the IAB committed no legal error when it denied Mr. Wilson's petition. When Dr. Bose's certification lapsed, his status became that of an uncertified provider. Accordingly, the Board's decision must be **AFFIRMED**. **IT IS SO ORDERED.**

/s/ Jeffrey J Clark
Resident Judge

18